**SO ORDERED.**

**SIGNED August 25, 2006.**



_____
**HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION**

**IN RE:**                                                                                                         **CASE NO: 05-81897**
      **BRIAN SCOTT SPURLIN
      DEBRA FOGLEMAN SPURLIN
           (Debtors)**

**REASONS FOR DECISION ON MOTION TO CONVERT**

This matter comes before the Court on the debtor's motion to convert this case to one under Chapter 13 and the objections of the Chapter 7 Trustee and a creditor, 1000 South Michigan Avenue, who filed its objection with the alternative prayer for a re-Conversion of the case to one under Chapter 7, in the event the case converted as a matter of right. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2)(A). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 83.41.1, incorporated into Local Bankruptcy Rule 9029.3. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of

Bankruptcy Procedure 7052. Pursuant to these reasons, the debtors' Motion to Convert the case to one under Chapter 13 is DENIED and the case will remain a case under Chapter 7.

## FINDINGS OF FACT AND LEGAL ANALYSIS

This case was filed as a case under Chapter 7 on September 10, 2005.[1] After the §341 meeting and a F.R.B.P. 2004 examination were conducted, several adversary proceedings were filed objecting to the discharge and seeking to recover assets brought by the Chapter 7 Trustee and a creditor, 1000 South Michigan Avenue. The Chapter 7 Trustee filed a Motion for Turnover of financial records and tax returns on November 23, 2005, which was granted, but to date, no financial information has been given to the Trustee. On June 22, 2006, debtors filed a Motion to Convert this case to one under Chapter 13, which was followed by the objections filed by the Trustee and 1000 South Michigan Avenue. Just prior to the filing of the Motion to Convert, debtors filed an amended Schedule F, solely for the purpose of re-characterizing the debt (in the amount of $705,000.00) owed to 1000 South Michigan Avenue as "contingent, unliquidated and disputed."

The Motion to Convert was denied as filed in light of the objections to eligibility, set for a hearing, and after the matter was argued, the matter of conversion was taken under advisement. During the hearing the transcript of Mr. Spurlin's 2004 examination was admitted into evidence.

**Absolute Right to Convert**

Although this Court recognizes the "absolute" right of a debtor to convert his case as stated in the unreported opinion by the United States Fifth Circuit Court of Appeal in *Pequeno v. Schmidt*, 126 Fed.Appx. 158 (5th Cir. 3/4/2005), in this instance, the objections to the motion to convert were

---

[1] The filing date precedes the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act.

founded on the question of the debtors' eligibility to be debtors in a Chapter 13 case, and a motion to reconvert the case to one under Chapter 7 is pending contemporaneously with the objection, such that even if the case was converted, there is an immediate motion to reconvert filed, heard, briefed and pending for this Court to decide. Further, §706(d) requires the debtor to be eligible to be a debtor under the new chapter in order to convert the case. Therefore, it is not helpful that counsel to the debtors argues the fact that there is an absolute right to convert while failing to provide a response to the assertion that the debtors are ineligible for Chapter 13 relief. (*See* Doc. no. 45.) The fact is that absolute or not, debtors may not convert a case under one chapter to another chapter, unless such debtors are eligible for relief under the chapter to which they wish to convert.

**Who May be a Debtor and the Regular Income Requirement**

11 U.S.C. §109(e) provides: "Only an individual with *regular income* that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975 may be a debtor under chapter 13 of this title." (Emphasis supplied.) In this instance, the objectors to conversion/movers for reconversion bear the burden of showing the debtors are ineligible under §109(e) to be debtors in a Chapter 13 case. *U.S. v. May*, 211 B.R. 991,997 (M.D.Fla. 1997).

In this effort, the Chapter 7 Trustee avers in its objection and accompanying memoranda that the move to convert this case to one under Chapter 13 was abusive and made in bad faith by these debtors in response to the order to turnover financial information. The Trustee cites as evidence of

3

the debtors' bad faith the failure to provide any financial information in compliance with the turnover order, the repeated failure to answer specific questions regarding finances and assets in the 2004 examination, and the alleged failure to disclose assets, as more specifically set forth in his supplemental memorandum (Doc. no. 44).

Also in effort to challenge the pending conversion, 1000 South Michigan Avenue avers that the debt listed to its client in the amount of $705,000.00 is *not* contingent, unliquidated and disputed, notwithstanding debtors' amendment to the schedules filed immediately prior to the filing of the motion to convert. Therefore, it maintains that debtors are ineligible to file under Chapter 13 under §109(e) as their unsecured debts exceed the $307,675.00 cap. This Court finds the fact that the debt was listed on Mr. Spurlin's personal bankruptcy schedules as "non-contingent, liquidated and un-disputed" up and until the point when the motion to convert the case was filed certainly suggests that close scrutiny of that amendment is warranted.

The general rule is that disputed debts should be included in the § 109(e) debt calculations. *In re Visser*, 232 B.R. 362, 364 (Bankr.N.D.Tex.1999) "The existence of a dispute over part or all of a debt does not convert the debt from a liquidated one to an unliquidated one." *Id.* at 365, *citing U.S. v. Verdunn*, 89 F.3d 799, 802 & n. 9 (11th Cir.1996)("where the court, citing to numerous authorities, opined that the overwhelming body of precedent is that debts in dispute are included in the § 109(e) computations"). This debt is not "unliquidated" in that the *amount* of the debt owed does not appear to be in dispute as the claim is scheduled in precise amount. *See In re Hendricks*, 250 B.R. 415 (Bankr.M.D.Fla. 2000); *And See In re: Michaelsen*, 74 B.R. 245 (Bankr.D.Nev. 1987)(claim was not contingent when contractor/debtor failed to acquire lots as required under a contract); *Cf. In re: Baird*, 228 B.R. 324 (Bankr.M.D.Fla. 1999)(where debt was contingent where

4

debtor/corporate officer had *not admitted* personal liability for the alleged fraud and civil theft.)  It is also a curious thing that Mr. Spurlin listed the debt to 1000 South Michigan Avenue on his personal schedules and on the list of unsecured debts in the Spurlin & Associates case (No. 05-81898).  Even so, "just because a claim is unliquidated, disputed or unmatured apparently does not mean it is contingent."  *In re All Media Properties, Inc*., 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir.1981).

Because the merits of the claim pending by 1000 South Michigan Avenue against these debtors in the related adversary proceeding to revoke or deny the discharge, Adversary Proceeding No. 06-08016, is not presently before the Court, we must resist the pull of these facts into that proceeding, except insofar as Spurlin's explanation of the claim bears on the threshold issue of eligibility.  While it is the burden of the trustee and creditor in this situation to prove ineligibility, and these parties focus strongly on the unsecured debt limit, it occurs to the Court that the debtor himself has made their case for them in his Rule 2004 examination testimony by proving his ineligibility to be a Chapter 13 debtor because he does not have *regular income* as required by §109(e), as discussed further herein.

This is not to say that this Court does not share the concerns of the objectors relating to the debtors failure to disclose assets and the other transgressions set forth in their objections. In the case of *In re Dunn*, 1990 WL 8469 (Bankr. W.D. Pa. 1990), the Court noted that the face of the cover sheet and the petition "sparked the issue of whether or not the Debtor was eligible to be a Chapter 13 debtor because of the amount of debt listed and because of his questionable employment status." There, the Court determined debtor was in fact ineligible for relief under Chapter 13 and dismissed the case as a bad faith filing.  It appears that the issue of eligibility in that matter was only the tip

5

of the iceberg. Likewise, as the debtors raise the issue of the possible corporate veil defense, this court will defer the exploration of the alleged omissions and transgressions of the Spurlins to another date, noting that the trustee has instituted adversary proceedings to deny the discharge and recover assets (Doc. nos. 06-8020, 06-8021, and 06-8030), and those matters must await their day in court. Thus, these reasons now turn to an examination of the evidence offered at the hearing.

**Application and Summary of the Evidence**

The 2004 examination of Mr. Spurlin, was taken on February 16, 2006, wherein he testified regarding his occupation and source of income, among other topics. Therein he stated that his wife, Debra, last worked as a substitute teacher in May or August of 2005, but now takes care of her elderly mother who lives with them, therefore is not otherwise employed. (Transcript, p.8-9.) Mr. Spurlin states that he is an independent contractor. (Transcript, p. 5.) He volunteers the following explanation:

> What I do is I work with – you know, at present work with, you know, companies trying to sell paper. When I say paper, you know, they have what's called medium term notes or they work with standby letters of credit or bank guarantees, you know, wanting to sell them, and I also work with brokering oil and gas deals.

(Transcript, p. 5.) He expounded, "I help to broker, bring, just bring companies together. They have to work through their banks after that. In other words, I can't physically do it you know. I just bring a buyer and seller together and I receive a commission for that if the transaction is complete." He claims to attract clients by word-of-mouth. When asked, "how do you get paid, do you get a commission," he responded: "Right. And I sure am looking for one now to survive I guess." (Transcript, p.6-7.) Prior to the filing of the case, he worked for Spurlin & Associates, Inc. (who

6

also filed a Chapter 7 case, No. 05-81898) for whom he:

> Really what I was doing was helping put companies together with collateral providers and the collateral providers would, you know, launch their collateral with financial institutions for, you know, the company, what you would call a broker."

(Transcript, p.7-8.) Mr. Spurlin admits he has no broker's license. In explaining the circumstances of filing his personal bankruptcy case, he says, "Just business wasn't there and I just, you know – I mean when you work for yourself, I just, I just didn't have anything to fall back on." (Transcript, p.9.)

Based on the foregoing, the Court cannot discern from the 2004 testimony exactly what the debtor does for a living or how he is paid, but what is equally puzzling in the testimony provided by Mr. Spurlin is how he accounts for the provision of basic living expenses. For example, the family home in Tennyson Oaks Subdivision, Alexandria, Louisiana (although the debtors have since moved to Baton Rouge, Louisiana) was "leased" from a company called Golden Choice Financial, which he explained is owned by his mother-in-law. (Transcript, p.14, 58.) But later in the testimony, he stated that Golden Choice Financial did not own any real property, other than the temporarily transferred ownership of the mother-in-law's home on Mohon Drive in Alexandria, Louisiana, and referring to the company, admits "its just a shell now." (Transcript, p.59.)

Further, when questioned about the expenses and lack of assets scheduled, he states he has been given "the right to drive" a 2001 Mercedes automobile, a 2002 H2 Hummer automobile, and a 2002 Cadillac Escalade ESV automobile, by a company called Golden Athletics, LLC, which is owned by the "Brian and Keaton Spurlin Trust" and is managed by Mr. Spurlin. (Transcript, p.21-23.) He also alleges an international company called Pentire Associates is involved in Golden

7

Athletics in the following way: "You know, I managed Golden Athletics and, you know, they needed to work with me in business and I didn't have anything, you know, I could give to them, you know, inside of it, so the trust allowed them to take in fifty percent of the company so we could do business here in the United States."[2] (Transcript, p.23-24.) When pressed top describe what Golden Athletics does, he states, "It really doesn't do anything." (Transcript, p.24.)

By the testimony highlighted above, the debtor indicates his companies do nothing, he merely seeks to "survive," and he obviously does not maintain the over $4000 gross monthly income his schedules indicate he receives. The court notes the *Lesane* case, in which the debtor did not file her Chapter 13 petition in good faith where he indicated she received no regular income and, in fact, indicated the lack of same as the reason for filing the case, admitting she kept filing cases whenever she would lose a job. *In re Lesane*, 301 B.R. 625 (Bankr.M.D.Ga.2003). Mr. Spurlin states that he is now an independent contractor, however, it is not at all clear what, if anything, he is contracting to do.

The regular-income test is not a difficult one to pass. In deciding whether debtor has sufficient "regular income" to be eligible for Chapter 13 relief, the phrase "regular income" is construed to include many non-employment sources, such as welfare, pension and social security income. *In re Hagel*, 184 B.R. 793 (9th Cir. BAP 1995). Even a debtor's three months' experience of doing "odd jobs" demonstrated a sufficient regularity and stability of income to be eligible for Chapter 13 treatment. *Matter of Cole*, 3 B.R. 346 (Bankr.S.D.W.Va. 1980). But these debtors, however, do not allege any source of regular income in direct contradiction of the schedules filed. Mr. Spurlin merely alleges in his schedules that he is employed by Spurlin & Associates, now in its

---

[2]The alleged trusts are named as defendants in the Adversary Proceeding no. 06-8030.

8

own bankruptcy case, as general manager. Yet, in his Rule 2004 testimony states that he has not worked for Spurlin & Associates since the time of the filing of the petition. Along this line of facts, a debtor who lost the employment on which his Chapter 13 plan was predicated and who had been unable to secure other employment, but who expected to be employed within two months of confirmation hearing, was not an "individual with regular income," and thus was not eligible for Chapter 13 relief. *In re Donohue*, 81 B.R. 714 (Bankr.S.D.Fla. 1987).

Further, in a case where debtors and their son were in partnership, the son handled income receipts and disbursements, "allocated" expenses between himself and debtors, and controlled the amount of income they received, there was no "regular income," and debtors were ineligible for Chapter 13 relief. *In re Ross*, 173 B.R. 943 (Bankr.E.D.Okla.1994). But most significantly, the Court notes that a Chapter 13 debtor's "total failure to provide any credible information concerning his income" precluded a court from determining either that he was individual with sufficiently stable and regular income that he was eligible to be debtor under Chapter 13, or that he was devoting all of his disposable income to payments under plan. *In re Nosker*, 267 B.R. 555, 560 (Bankr.S.D.Ohio 2001)(reconsideration denied).

Touching briefly on the claim of 1000 South Michigan Avenue, Mr. Spurlin's explanation of the transactions involving that claim does not suggest any regular source of income at the present time, if ever. Mr. Spurlin maintains that 1000 South Michigan Avenue wired $705,000.00 to an account for Spurlin & Associates, Inc. pursuant to an "escrow agreement," but that Mr. Spurlin transferred the funds to his "personal and corporate attorney" and "investor," a Mr. James W. Hill in Dallas, Texas, for the purpose of investing in a company called Bridge Energy. (Transcript, p.16-18.) Mr. Spurlin claims Mr. Hill died in October of 2003, and in his testimony and schedules alleges

9

to be pursuing the Mr. Hill's estate for the missing funds. (*Id*.) These same funds are listed as "held in an escrow account" in his schedules. Moreover, Mr. Spurlin alleges he does not have the funds available to prosecute an action against the estate of Mr. Hill, who, he acknowledges, did not keep any records of the supposed investment of $705,000.00. When asked whether he ever made a claim against Mr. Hill, stated: "Yes. To make a claim – we did a search on him. We were going to make a claim against his error and omissions, you know, insurance policy, which is our understanding when you are licensed with the state of Texas, it's automatic. Well, his license had expired, so he had no insurance, you know, at his death, which alludes -- you know, that stopped that. We can make a claim against his estate and go after this Bridge Energy, but I don't have the funds available to do this with."[3,4] (Transcript, p.18.) Since the funds in question were routed through a corporation which is now in a Chapter 7 and involve a claim against a deceased individual, it seems unlikely that any recovery of funds in the near future that could be used to fund a plan is unlikely at best.

Accordingly, the Court finds that these debtors are ineligible under §109(e) to be Chapter 13 debtors for lack of "regular income," and pursuant to §706(d), requiring a debtor to be eligible to be a debtor under the new chapter in order to convert the case, the motion to convert is denied and the case will remain a case under Chapter 7.

---

[3]The escrow agreement entered as evidence at the hearing on Motion to Convert indicates that the funds wired to Spurlin & Associates would be returned to 1000 South Michigan Avenue upon ten days notice "if closing does not occur." (Exhibit Joint-1) It is beyond peradventure at this point that the closing did not occur, the funds were not returned, and recovery is speculative at best. Although debtor's sketchy explanation of the transaction scarcely provides any credible basis for disputing the claim, these reasons do not decide that issue.

[4]What does "we did a search on him" mean? The evidence is replete with these evasive, non-committal type of answers and incomplete disclosures, is there a law suit pending or not? Based on the whole sum of the Rule 2004 testimony, apparently not.

10

## CONCLUSION

Based on the foregoing reasons, the debtors' motion to convert this case to one under Chapter 13 is Denied. A separate conforming order will be entered.

# # #